UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN L. LERCH,

        Plaintiff,

  v.                                Case No. 05-C-484

JEAN ANGELL,
SCOTT A. NELSON,
KEN LOEHLEIN, and
CITY OF GREEN BAY,

        Defendants.

## DECISION AND ORDER

Plaintiff John L. Lerch, a landlord and property owner in Green Bay, Wisconsin, brought this "class of one" equal protection action against the City of Green Bay and several of its building inspectors under 42 U.S.C. § 1983. Lerch, proceeding *pro se*, alleges that his properties were singled out for disproportionately harsh treatment by the Green Bay Inspection Department. Defendants, Jean Angell, Scott A. Nelson, Ken Loehlein, and the City of Green Bay, have now moved for summary judgment. They argue that, although the Supreme Court has held that an individual who is not a member of protected class can assert an equal protection claim as a "class of one", plaintiff is unable to establish such a claim in this case. Furthermore, the individual Defendants argue they are protected from liability by a defense of qualified immunity and, the case must now be dismissed. For the reasons that follow, I conclude that plaintiff has failed to demonstrate that there is sufficient evidence as a matter of law to establish such a claim. The defendants' motion will therefore be granted.

# FACTS[1]

Lerch has been a property owner in Green Bay for twenty-five years, and at the time of this lawsuit he owned and rented out nine residential properties. (Def. PFOF ¶¶ 13-14.) Over the past fifteen years Lerch has received various citations for housing code violations regarding these residential rental properties from the Green Bay Inspection Department. (Def. PFOF ¶ 15.) His tenants have complained on numerous occasions about the condition of their homes. (Def. PFOF ¶ 16.) The collection of housing code violations implicated in this lawsuit begins in 2000 and includes litter and rubbish on the property, an unpaved driveway apron, chipping paint and insufficient weather-proofing of exterior surfaces among other things. (Lerch Aff. ¶¶ 6, 20, 22, Ex. AA, L, M.) In addition to receiving citations, Lerch was billed for the cost of correcting some of these transgressions by the city. (Lerch Aff. Ex. K.)

Lerch does not claim that there was no factual basis for the citations, but only that other property owners who committed the same violations were treated less harshly than he. He avers in his affidavit, for example, that several other property owners failed to pave their driveway aprons. (Lerch Aff. ¶¶ 6-9, Ex. AA-C.) However, according to Lerch, no corrective action was taken against them, while he received a citation for the offense. (*Id.*) He also complains that inspectors issued citations to him for conditions caused by his tenants and that, whereas he would be issued citations, other property owners with similar violations would be given a warning and allowed time to repair the property. (*Id.* ¶¶ 13, 20.)

Defendants concede that not all housing violations and complaints result in citations. (Wolfgang Aff. ¶ 3, Ex. 1; Def.'s Resp. to Pl.'s Interrog. ## 1, 2, 4.) Over the past three years, the Inspection Department has received an average of just under 4,000 complaints and has

---

[1] Because Lerch failed to respond to Defendants' Proposed Findings of Fact (Def. PFOF), they are accepted as true. *See* Civil L.R. 56.2(e).

2
Case 1:05-cv-00484-WCG   Filed 06/22/06   Page 2 of 8   Document 45

issued between 212 and 485 citations per year. (Def. PFOF ¶¶ 18-23.) Under the city's building code, an inspector has discretion to issue a citation to either the property owner or the tenant. (Def. PFOF ¶ 28.) Inspectors also have discretion whether to issue a warning before issuing a citation. (Def. PFOF ¶ 39.) Moreover, issuance of a citation is only the first step in an enforcement process that includes an opportunity for a full adversary hearing in Municipal Court, followed by a *de novo* jury trial in the State Circuit Court. Wis. Stat. § 800.14. Lerch does not claim that the city's building inspectors have any influence over the municipal court.

On the basis of these facts, defendants contend that Lerch has failed to provide sufficient factual support for his claim. Defendants point to the fact that discovery has ended, and Lerch has only submitted his own affidavit which fails to set forth any facts on which a jury could find in his favor. Lerch counters that based on the facts in his affidavit a reasonable jury could find in his favor, and thus he is entitled to his day in court.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

Both Plaintiff and Defendants recognize that under certain circumstances disparate treatment by a government actor can amount to a violation of the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution. The question presented here is whether plaintiff can produce evidence that those circumstances are present in this case. If so, the further question is whether the defendants are protected from liability under the doctrine of qualified immunity. To answer the first question, I must identify the appropriate standard for evaluating the equal protection case before me.

In *Esmail v. Macrane*, the Seventh Circuit held that, although the equal protection clause more commonly protects vulnerable groups, it can also be a tool for an individual standing alone when he or she has been subjected to "government action [which is] wholly impossible to relate to legitimate governmental objectives." 53 F.3d 176, 180 (7th Cir. 1995). The opinion noted that the equal protection clause protects against vulnerable groups, and a class of one is likely to be the most vulnerable of all. *Id.* Thus, an individual may prevail on a class of one theory, the Court held, when the plaintiff can prove that (1) he was treated differently from similarly situated individuals and (2) the difference in treatment was the result of "a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.*

Subsequent decisions by the Seventh Circuit made clear that in order to establish an equal protection class of one claim, both elements had to proven. Disparate treatment alone was not sufficient to prevail in a class of one action, for such a claim is essentially one of selective prosecution and has no standing in equal protection law. *Id.* at 179. Whether because of insufficient resources, disorganization or any number of other reasons, inconsistency in law enforcement is inevitable. That alone does not constitute a violation of the Constitution, for if it did, the federal courts would be forever entangled in the enforcement of local ordinances. Thus, in order to prevail on an equal protection class of one claim, the Court held that a plaintiff must

4

show both disparate treatment and illegitimate animus. *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd*, 528 U.S. 562 (2000).

Although the Supreme Court has accepted the concept that an equal protection claim can be based on a class consisting of only one person, it has yet to clearly delineate the elements of such a claim. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Court affirmed the Seventh Circuit's decision reversing the district court's dismissal of such a claim in a *per curiam* opinion that at least suggested that disparate treatment that is "irrational and wholly arbitrary," regardless of the motivation is sufficient to state an equal protection claim. *Id.* at 565 ("These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis."). Justice Breyer noted in his concurring opinion that requiring a plaintiff in such a case to establish that the defendants acted vindictively or with illegitimate animus was necessary to avoid "transforming run-of-the-mill zoning cases into cases of constitutional right," *Id.* at 566 (Breyer, J., concurring), but the rest of the Court was silent on the issue, stating "we ... do not reach the alternative theory of 'subjective ill will' relied on by that court." *Id.* at 565.

In the aftermath of the Supreme Court's decision in *Olech,* it is unclear whether the Seventh Circuit's earlier cases holding that the illegitimate motivation of a defendant official is an essential element of an equal protection class of one claim remain the law. Judge Posner appears to read the Court's decision in *Olech* as leaving the question open and, thus, the Seventh Circuit's previous treatment of the issue may remain the law, at least in this Circuit. *See Bell v. Dupperrault*, 367 F.3d 703, 709-13 (7th Cir. 2004) (Posner, J., concurring). Judge Ripple, on the other hand, reads *Olech* as recognizing an alternative way of proving a class of one equal protection claim that does not require a showing that the defendants bore the plaintiff

5

any animosity. *See Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 713-14 (7th 2004) (Ripple, J., concurring). *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir.2000), is a post-*Olech* case that follows Judge Posner's reading; *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir.2002), and *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001), reflect Judge Ripple's. Regardless of which approach is followed, however, Lerch's claim fails because he has failed to present any evidence that he was treated differently than similarly situated persons.

It is not enough, after all, for Lerch to show that other individuals owning property with the same violations were treated differently; he must show that those individuals were similarly situated and that the defendants intentionally treated them more favorably. *Lunini v. Grayeb*, 395 F.3d 761, 770 (7th 2005). Moreover, "[i]t is clear that similarly situated individuals must be very similar indeed." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *see also Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (holding that in order to be considered "similarly situated," comparators must be "prima facie identical in all relevant respects"). This is because no city is obligated to treat every violation of its building code the same. Given the number of violations in a city the size of Green Bay and the limitations on its budget and staff, the city is entitled to prioritize which violations and violators it pursues and how.

Similar considerations go into the decision to charge an individual with a crime. The Supreme Court has described the discretion exercised by criminal prosecutors in that situation as "particularly ill-suited to judicial review":

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall

6

> enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Wayte v. United States*, 470 U.S. 598, 607 (1985).

The same considerations apply here. The fact that Lerch was issued citations while others were not may be because of the number and locations of his properties. It could be because of his fifteen year history of housing code violations and his failure to correct previous problems in a timely manner. The record suggests that many of his tenants have filed complaints with the city inspectors, and this could be another reason why his property came to the attention of the inspectors while other properties with similar violations did not. The point is that there could be many reasons why a citation might be issued in one case and not in another. Lerch offers no evidence that any of the owners of properties he claims were treated differently were similarly situated. He offers no evidence that the disparate treatment of which he complains was "irrational and wholly arbitrary." *Olech*, 528 U.S. at 565. In the absence of such evidence, his claim must fail.

Lerch has also failed to produce any evidence that the allegedly disparate treatment he received was motivated by ill will, vindictiveness, or some other illegitimate state objective. The pleadings and evidence on the record in no way challenges the likely fact that any disparate treatment was the result of uneven law enforcement or an appropriate exercise of discretion. In Defendants' response to Lerch's interrogatories they clearly acknowledge that the approximately 20,000 inspections completed over the past six years have resulted in roughly 15,000 orders and 2300 citations. (Def.'s Resp. to Pl.'s Interrog. ## 1, 2, 4.) The fact that not

7

every violation results in a citation is obvious and inevitable. It is not a violation of the Constitution.

## CONCLUSION

Lerch has failed to demonstrate he has evidentiary support for either element of his "class of one" equal protection claim. Though he has provided evidence of disparate treatment by the City of Green Bay, he has not provided evidence that he was similarly situated to those he claim were treated differently. He also failed to present any evidence that the allegedly disparate treatment was motivated by some illegitimate animus or ill will. Thus, even with every allowable inference drawn in his favor, no reasonable trier of fact could find for Lerch on essential elements of his claim.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is granted and the action is dismissed with prejudice.

Dated this   22nd    day of June, 2006.

                                               s/ William C. Griesbach
                                               William C. Griesbach
                                               United States District Judge